UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES L. SHELDON and SHIRLEY A. VEENEMA, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:22-cv-11198-IT |
| DT SWISS AG and MERLIN CYCLES, LTD., | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 22, 2023

TALWANI, D.J.

Plaintiffs James L. Sheldon and Shirley L. Veenema bring this products liability and negligence suit against Defendants DT Swiss AG ("DT Swiss") and Merlin Cycles, Ltd. ("Merlin"). Sheldon alleges he sustained injuries when a DT Swiss bike part he purchased from Merlin malfunctioned. Veenema, Sheldon's wife, alleges loss of consortium due to Sheldon's injuries and recovery. Pending before the court are DT Swiss's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 11] and Merlin's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 21]. Both Defendants contend that the court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and the Massachusetts long-arm statute. In response, Plaintiffs filed their Opposition to Defendant DT Swiss AG's Motion to Dismiss and Conditional Motion for Jurisdictional Discovery ("Pl.'s DT Swiss Opp'n") [Doc. No. 16] and Opposition to Defendant Merlin Cycles, LTD's Motion to Dismiss and Conditional Motion for Jurisdictional Discovery ("Pl.'s Merlin Opp'n") [Doc. No. 23].

For the following reasons, as to Defendant DT Swiss, the <u>Motion to Dismiss</u> [Doc. No. 11] is

GRANTED and the <u>Conditional Motion for Jurisdictional Discovery</u> [Doc. No. 16] is DENIED.

As to Defendant Merlin, the <u>Motion to Dismiss</u> [Doc. No. 21] is DENIED without prejudice and

the <u>Conditional Motion for Jurisdictional Discovery</u> [Doc. No. 23] is GRANTED.

## I.   Background

### A.   Facts as Alleged in Complaint

Sheldon and Veenema are residents of Massachusetts. Complaint ("Compl.") ¶¶ 4-5

[Doc. No. 1]. In September 2019, Sheldon purchased through Merlin's website a ratchet wheel-

mounting system ("RWS") manufactured by DT Swiss. <u>Id.</u> at ¶¶ 18-19. Merlin shipped the RWS

to Sheldon's residence in Massachusetts. <u>See id.</u> at ¶ 19. After receiving and installing the RWS,

Sheldon had a bicycle accident in Connecticut resulting in serious injuries, including a brachial

plexus injury and traumatic brain injury. <u>Id.</u> at ¶¶ 1, 20. Sheldon alleges that the RWS broke

"suddenly and without warning" while he was riding, "causing the front wheel of [his] bicycle to

separate from the apparatus and causing the bicycle to violently and forcefully pitch forward and

crash into the ground." <u>Id.</u> at ¶ 20.

### B.   Jurisdictional Facts in the Record

#### 1.   DT Swiss

##### a.   As Asserted by DT Swiss

DT Swiss is neither incorporated nor has its principal place of business in Massachusetts.

Decl. of Michael Schuetz in Support of DT Swiss AG's Motion to Dismiss ("Schuetz Decl.") ¶ 6

[Doc. No. 12]. DT Swiss has never been registered, licensed, or otherwise authorized to do

business in Massachusetts; has never had a registered agent in Massachusetts; and has never

owned, rented, or leased any property in Massachusetts. <u>Id.</u> at ¶¶ 7-9. No employee or

representative of DT Swiss has traveled to Massachusetts on its behalf and DT Swiss does not

maintain any assets, phone numbers, or bank accounts in the Commonwealth. Id. at ¶¶ 10-13. DT

Swiss has never paid taxes to Massachusetts. Id. at ¶ 14.

DT Swiss has never manufactured or designed any product in Massachusetts or

conducted any related business activities here. Id. at ¶ 16. The RWS at issue was designed in

Switzerland, and manufactured in Switzerland, Taiwan, or Poland. Id. at ¶ 17.

DT Swiss did not sell, ship, deliver or otherwise supply the RWS to Plaintiffs in

Massachusetts and has never directly sold, shipped, delivered, or otherwise supplied any product

to Massachusetts or contracted with anyone to supply products in Massachusetts. Id. at ¶¶ 19-21.

DT Swiss does not sell directly to retailers or end consumers in the United States. Id.

¶ 23. Instead, DT Swiss sells its products to distributors located in Florida, Indiana, and New

Mexico, and to bicycle manufacturers or brands located in California, Illinois, Minnesota, and

Wisconsin. Id. at ¶¶ 24, 27, 29. DT Swiss has never sold any product to any distributor,

manufacturer, or brand located in Massachusetts. Id. at ¶¶ 28, 30.

Distributors, manufacturers, and brands may sell DT Swiss's products to retailers or

dealers anywhere in the United States. Id. at ¶¶ 27, 32. Although DT Swiss "is not required to

and does not approve sales of its products by distributors," id. at ¶ 31, DT Swiss's website

identifies nine dealers in Massachusetts as "DT Swiss dealer[s]," id. at ¶ 33. Although a "product

order [is] possible" through those dealers, dealers operate at the sole discretion of the

distributors, and DT Swiss does not have any contract or contact with them. Id. at ¶¶ 33, 36.  DT

Swiss has no input or control regarding where in the United States, to whom, or at what price

distributors, retailers, or brands sell its products. Id. at ¶ 31. Merlin is not listed as a

Massachusetts dealer on DT Swiss's website. Id. at ¶ 38.

      b.   As Asserted by Sheldon

DT Swiss products are available "in most, if not every, bike shop in Massachusetts" as well as at cycling events in the state and "in paper and online trade publications available in Massachusetts." Aff. of James Sheldon in Supp. of Pl.s' Opp. to Def. DT Swiss AG's Mot. to Dismiss ("Sheldon DT Swiss Aff.") ¶ 4a [Doc. No. 16-1]. DT Swiss has marketed its products via paper and online advertising, through athletic sponsorships, and through their commercial prevalence at Massachusetts dealers. Id. at ¶ 4b. DT Swiss has "fostered an ongoing connection with Massachusetts customers through its use of its Massachusetts dealers to advise and educate; to sell; to service, repair, and replace; and to warranty DT Swiss products." Id. at ¶ 4c.

DT Swiss's website identifies nine dealers in Massachusetts through whom it markets, sells, and services its products. Id. at ¶ 5. It also offers Massachusetts customers "repair" and "warranty" services, as well as "answers to 'technical' questions [and] 'general' product questions through its Colorado Service Center." Id. at ¶ 6.

    2.   Merlin

      a.   As Asserted by Merlin

Defendant Merlin is incorporated and has its principal place of business in the United Kingdom. Aff. of Andrew Oldham ("Oldham Aff.") ¶1 [Doc. No. 22-1]. Merlin sells bicycles, bicycle component parts, and bicycle clothing. Id. at ¶ 2. It has one brick-and-mortar store in England and maintains a website that is accessible to anyone where its products can be purchased. Id. at ¶¶ 2, 13. Merlin ships orders made through its online store to the United States using a third-party carrier service. Id. at ¶ 21.

Merlin has no officers or employees located in Massachusetts and has never assigned any officers or employees to work in or attend business meetings in Massachusetts. Id. at ¶ 4. Merlin

has never maintained offices, had a mailing address, owned or leased real estate, or maintained a telephone line in Massachusetts. Id. at ¶¶ 5-6. Merlin has not conducted advertising campaigns in or targeting Massachusetts. Id. at ¶ 7. It has not paid taxes of any kind, has never owned any stock or commercial paper, has never been registered to do business, has never had any licenses, and has never had an agent for service of process or otherwise in Massachusetts. Id. at ¶¶ 8-10.

Merlin is not a parent, subsidiary, or related company of DT Swiss and was not involved in the conception, design, or manufacture of the RWS.[1] Id. at ¶¶ 3, 12. It did not specifically target the DT Swiss RWS for marketing in Massachusetts. Id. at ¶ 12.

   b. As Asserted by Sheldon

Merlin makes "extensive offerings to Massachusetts residents" including educational and advisory resources, extensive inventory, good customer service, and warranty and return services. Aff. of James Sheldon in Supp. of Pl.s' Opp. to Def. Merlin Cycles, Ltd.'s Mot. to Dismiss ("Sheldon Merlin Aff.") ¶ 4b [Doc. No. 23, Attach. A]. Merlin has sent Sheldon approximately 728 marketing emails, including emails promoting the RWS. Id. at ¶ 5. Sheldon has not opted in to receiving Merlin's marketing emails. Id. at ¶ 6. He purchased the RWS from Merlin while a resident of Massachusetts and the RWS was delivered to his home in Massachusetts. Id. at ¶¶ 14-15.

## II.  Legal Standard

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 711-12 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23,

---

[1] Moreover, as discussed in DT Swiss's declaration, Merlin is not identified as a dealer on DT Swiss's website. Schuetz Decl. ¶ 38 [Doc. No. 12].

26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the

burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18

(1st Cir. 2015).

Where the court considers a Rule 12(b)(2) motion without holding an evidentiary

hearing, as here, the court applies the "prima facie standard." Sawtelle v. Farrell, 70 F.3d 1381,

1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff must

"proffer[] evidence that, if credited, is enough to support findings of all facts essential to

personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). The

court "must accept the plaintiff's (properly documented) evidentiary proffers as true," Foster-

Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995), but the plaintiff

must "go beyond the pleadings" and "provide affirmative proof of their jurisdictional

allegations," Boit, 967 F.2d at 675, 681. Courts must also consider a defendant's undisputed

jurisdictional facts. See Kuan Chen v. United States Sports Academy, Inc., 956 F.3d 45 (1st Cir.

2020). Generally, courts considering jurisdictional claims are not required to "credit conclusory

allegations or draw farfetched inferences." Lin v. TipRanks, Ltd., 19 F.4th 28, 33 (1st Cir. 2019)

(quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal

court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the

forum state." Cossart, 804 F.3d at 18 (quoting Sawtelle, 70 F.3d at 1387). Thus, to establish

personal jurisdiction over the Defendants, Plaintiffs "must meet the requirements of both the

Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Id.

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite

similar to, though not completely congruent with, the jurisdictional requirements imposed by the

Due Process Clause." <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted). Even where a party presents "jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites" of the long-arm statute. <u>Good Hope Indus., Inc. v. Ryder Scott Co.</u>, 378 Mass. 1, 6, 389 N.E.2d 76 (1979); <u>see also</u> <u>Burtner v. Burnham</u>, 13 Mass. App. Ct. 158, 161-62, 430 N.E.2d 1233 (1982) ("It now appears to be recognized that application of [the Massachusetts long-arm statute] requires that (even if the fact pattern of the case is constitutionally acceptable) the circumstances of the particular case come within one of the specific subsections of [the Massachusetts long-arm statute]."). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." <u>Lopez v. AngioDynamics, Inc.</u>, 2021 WL 5040320, at *3 (D. Mass. Oct. 28, 2021) (internal citation omitted).

The Massachusetts long-arm statute provides in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> (b) contracting to supply services or things in this commonwealth;
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . .

Mass. Gen. Laws c. 223A, §3.

"[A] plaintiff who seeks jurisdictional discovery must make 'a colorable claim [for] jurisdiction' . . . ." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 128 (1st Cir. 2022) (quoting Swiss Am. Bank, Ltd., 274 F.3d at 625-26). "The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." Id. "Even so, the district court possesses broad discretion to determine whether jurisdictional discovery is warranted." Id. (internal quotation marks omitted).

### III. Discussion

#### A.  Personal Jurisdiction over DT Swiss

DT Swiss argues that it cannot be reached by any provision of the long-arm statute because it has not transacted business, contracted to supply services or things, committed a tortious act or omission, or caused tortious injury in Massachusetts. Def. DT Swiss AG's Mem. of Law in Supp. of its Mot. to Dismiss the Compl. and Pursuant to Fed. R. Civ. P. 12(b)(2) 8-12 [Doc. No. 13].

Plaintiffs contend that DT Swiss transacted business in the Commonwealth under subsection (a) by cultivating a market through advertising; selling products through its Massachusetts dealers; and providing service, repair, and warranty services through its authorized Massachusetts dealers and its Colorado service center, which also serves Massachusetts residents. Pl.'s DT Swiss Opp'n 11 [Doc. No. 16]. As to subsections (b)-(d), Plaintiffs contend that the court cannot determine whether they confer jurisdiction without additional jurisdictional discovery. Id. Plaintiffs also argue generally that because they have satisfied the requirements for constitutional due process, they have also satisfied the long-arm statute. Id.

To be within the reach of subsection (a) of Massachusetts's long-arm statute, DT Swiss must have transacted business in the Commonwealth. Courts must "construe[] the 'transacting any business' language of the statute in a generous manner," and focus on "whether the defendant[s] attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). In deciding whether a defendant has satisfied the "transacting any business" requirement, courts look to see whether the transacted business was a 'but for' cause of the harm alleged in the claim. Tatro v. Manor Care, Inc., 416 Mass. 763, 771-72 635 N.E.2d 549 (1994).

Plaintiffs make three arguments as to how DT Swiss satisfies this requirement: (1) DT Swiss has systematically cultivated a market in Massachusetts through advertising; (2) DT Swiss sells its products in Massachusetts through its Massachusetts dealers; and (3) DT Swiss provides service, repair, and warranty services to Massachusetts customers through its Massachusetts dealer and its Colorado service center, which serves Massachusetts residents. Pl.'s DT Swiss Opp'n 11 [Doc. No. 16].[2] The court addresses each argument in turn.

First, courts applying the Massachusetts long-arm statute have generally held that global marketing campaigns, advertisements in trade magazines, and publications in online trade editorials and on social media platforms, are not sufficient to confer jurisdiction under subsection (a). See Rhodes v. Tallarico, 751 F. Supp. 277, 278-79 (D. Mass. 1990) (reasonable expectation that advertisements in trade periodicals would reach Massachusetts insufficient to confer

---

[2] In support of their argument that subsection (a) of the long-arm statute reaches DT Swiss, Plaintiffs cite only Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017 (2021). Ford is inapt because it speaks only to the constitutional due process requirements for personal jurisdiction, not the Massachusetts long-arm statute which, as discussed, is not entirely coextensive with constitutional due process.

jurisdiction under subsection (a) where magazines "do not appear to be aimed specifically at Massachusetts customers"); Polaroid Corp. v. Feely, 889 F. Supp. 21, 27 (D. Mass. 1995) ("Massachusetts courts have held that national advertisements not aimed specifically at Massachusetts residents cannot subject a defendant to jurisdiction in this state.").

Plaintiffs alleged that DT Swiss markets its products "via paper and online advertising, through athletic sponsorships, and through their commercial prevalence" in bike stores in Massachusetts. Sheldon DT Swiss Aff. ¶ 4b [Doc. No. 16-1]. DT Swiss does not dispute that it utilizes print and online marketing campaigns, but notes that it has never advertised in Massachusetts, specifically, but rather "globally through trade magazines, online trade editorials, and social media." Schuetz Decl. ¶¶ 41-42 [Doc. No. 12]. It further notes that none of its marketing campaigns are based in, directed at, or conducted through Massachusetts or Massachusetts outlets. Id. at ¶ 43. Without evidence that DT Swiss has targeted Massachusetts with more intent and specificity than global trade magazines and online trade editorials, the fact that those marketing efforts reached Sheldon in Massachusetts is insufficient to satisfy the transacting business requirement of the long-arm statute.

Second, courts have found that foreign corporations that sell products in Massachusetts through independent distributors are not transacting business in the Commonwealth for purposes of the long-arm statute. See Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG, 26 Mass. App. Ct. 14, 17-18, 522 N.E.2d 989 (1988) (declining to find that West German manufacturer that sold machine to Swiss corporation that in turn sold the machine to a US distributor that sold to customers in Massachusetts was transacting business in the Commonwealth); Greineder v. Foster & Smith, Inc., 1997 WL 1229244 (Mass. Super. Ct. Nov.

25, 1997) (declining to exercise jurisdiction over German company that had no ownership interest in or control over marketing, pricing, or sales of, its distributor).

DT Swiss proffers that it maintains no authorized distributor in Massachusetts, and the nine Massachusetts businesses listed on its website have relationships with DT Swiss's distributors (none of which are in Massachusetts), not with DT Swiss itself. Schuetz Decl. ¶¶ 32-37 [Doc. No. 12]. Further, DT Swiss has no control over where, to whom, or at what price, its distributors or its distributor's dealers sell DT Swiss products. Id. at ¶ 31. DT Swiss's connection to the Commonwealth by listing dealers on its website is too attenuated to support a finding that it transacted business for purposes of the long-arm statute.

Finally, Plaintiffs' contention that DT Swiss's service, repair and warranty services justify jurisdiction under the long-arm statute is unpersuasive. The reference to the Colorado service center is immaterial, even if it could be shown that Massachusetts customers have traveled to Colorado to have their DT Swiss products serviced. And, to the extent that DT Swiss products can be serviced or repaired at locations in Massachusetts, those Massachusetts dealers receive products from DT Swiss's distributors, not from DT Swiss directly, and DT Swiss has no contact with or control over those businesses, as discussed above. Schuetz Decl. ¶ 36-37 [Doc. No. 12]. This, too, is insufficient to show that DT Swiss has "transacted business" in the Commonwealth such that it can be reached by the Massachusetts long-arm statute under subsection (a).

Moreover, even if the court assumes that DT Swiss transacts business in the Commonwealth, Plaintiffs must also establish that their "cause of action arises out of [DT Swiss's] business transactions in Massachusetts," see Merced v. JLG Indus., 193 F. Supp. 2d 290, 292-93 (D. Mass. 2001), which they have not done. In determining whether a defendant's

business transactions give rise to a plaintiff's cause of action, courts apply a "but-for" causation test. See Tatro, 416 Mass. at 771-72. In this case, the question is whether, but for DT Swiss's activities in Massachusetts, Plaintiffs would have brought this action. See Sportschannel New England Ltd. P'ship v. Fancaster, Inc., 2010 WL 3895177, at *4 (D. Mass. Oct. 1, 2010). It is undisputed that Sheldon purchased the RWS at issue from Merlin, not DT Swiss. And, though Sheldon alleges that an advertisement from DT Swiss led him to purchase the RWS from Merlin, this is insufficient to establish causation where the advertisement was generally targeted, and DT Swiss had no involvement in the actual sale or distribution of the RWS.

The court also finds that subsections (b)-(d) are inapplicable to DT Swiss. DT Swiss's uncontradicted proffer is that it has contracts only with its authorized distributors and that none of those distributors are in Massachusetts. Without a contract to supply services or goods in the Commonwealth, DT Swiss is not subject to subsection (b) of the long-arm statute. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 158, 376 N.E.2d 548 (1978) (declining to exercise personal jurisdiction where "there is no evidence that the defendant specifically contracted to deliver or supply [goods] in the Commonwealth"). Additionally, it is undisputed that Sheldon's accident and injury did not occur in Massachusetts and that DT Swiss has not tortiously acted in Massachusetts, so DT Swiss is likewise not subject to jurisdiction under subsections (c) or (d) of the statute.[3] See Lewis v. Walt Disney Parks & Resorts U.S., Inc., 2019

---

[3] For purposes of establishing jurisdiction under subsection (d), Plaintiffs have not provided evidence showing that DT Swiss regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth. The court acknowledges that, without jurisdictional discovery, Plaintiffs may not have access to the evidence necessary to establish jurisdiction under subsection (d). However, subsection (d) also requires that the alleged tortious injury occurred in the Commonwealth. Plaintiffs have provided no authority, and the court has found none, for the proposition that jurisdiction pursuant to subsection (d) covers tortious injuries that occurred outside of the Commonwealth, as is the case here. If Plaintiffs have authority to show

WL 1505964, at *3 (D. Mass. Apr. 5, 2019) (finding no jurisdiction under long-arm statute

subsection (d) where plaintiff alleged she suffered injury outside of Massachusetts).

In sum, Plaintiffs have failed to establish that DT Swiss can be reached by any prong of

the Massachusetts long-arm statute. Accordingly, this court cannot exercise personal jurisdiction

over DT Swiss and need not address the constitutional due process question as to DT Swiss.

B.  *Personal Jurisdiction over Merlin*

1.  Massachusetts Long-Arm Statute

Plaintiffs' claims against Merlin are also subject to the requirements of the Massachusetts

long-arm statute. Plaintiffs argue that Merlin has transacted business in Massachusetts by

systematically cultivating a market for its products in Massachusetts, selling its products in

Massachusetts "through Merlin's Massachusetts directed marketing," and providing educational,

advisory, and return services to Massachusetts customers. Pl.'s Merlin Opp'n 13 [Doc. No. 23].

As to subsections (b)-(d), Plaintiffs contend that the court cannot determine whether they confer

jurisdiction without additional jurisdictional discovery. Id. Plaintiffs also argue generally that

because they have satisfied the requirements for constitutional due process, they have also

satisfied the long-arm statute. Id.

Merlin counters that it cannot be reached under subsections (c) or (d) of the long-arm

statute because Plaintiffs' complaint does not contain any factual allegations that Merlin

tortiously acted or failed to act in Massachusetts, and because it is undisputed that Sheldon's

injury occurred outside of Massachusetts. Memorandum of Law in Support of Defendant Merlin

Cycles, Ltd.'s Motion to Dismiss ("Merlin's Mem. in Supp.") 8 [Doc. No. 22]. Merlin also

---

that Sheldon's injury, though it occurred in Connecticut, may nonetheless confer jurisdiction
under subsection (d), Plaintiffs may seek reconsideration of the court's denial of their request for
jurisdictional discovery.

contends that it cannot be reached under subsections (a) or (b) of the long-arm statute because Plaintiffs' causes of action do not arise from Merlin's transacting business in the Commonwealth and Merlin did not contract to supply services or things in the Commonwealth. Id. at 8-9.

The court finds that jurisdiction cannot be exercised over Merlin under subsections (c)-(d) of the statute. It is undisputed that Sheldon's accident and injury did not occur in Massachusetts, and Plaintiffs make no allegation that Merlin acted tortiously in the Commonwealth.

The question is whether Merlin's shipment of the RWS to Sheldon in Massachusetts satisfies the requirement of the long-arm statute that a party either (a) transact business in Massachusetts or (b) contracted to supply goods or services here.

As detailed above, "for jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro, 416 Mass. at 767. Under subsection (b), which confers jurisdiction where a defendant "contract[ed] to supply services or things in this commonwealth," courts have construed "in this commonwealth" to mean the place where the services or things are supplied, rather than the place where the contract was made. See Droukas, 375 Mass. at 157.

Merlin relies on Droukas for its argument that it cannot be reached by the long-arm statute. Mem. of Law in Supp. of Def. Merlin Cycles, Ltd.'s Mot. to Dismiss ("Merlin's Mem. in Supp.") 8-9 [Doc. No. 22].  In Droukas, the plaintiff, a Massachusetts resident, sued a Florida corporation for breach of warranty claims related to two engines that defendant had sold and shipped to plaintiff. Droukas, 375 Mass. at 149. Plaintiff alleged that it had seen an advertisement for the engines by defendant in a trade magazine that was distributed in

Massachusetts; that it had ordered the engines via a phone call with the defendant in Florida; that plaintiff sent a check to defendant and defendant sent multiple letters to plaintiff in Massachusetts concerning the sale; and that defendant shipped the engines from Florida to Massachusetts. Id. at 151.

On appeal of the trial court's dismissal of the case for lack of personal jurisdiction, the Supreme Judicial Court affirmed that the defendant Florida corporation could not be reached by the Massachusetts long-arm statute. Id. at 153. The court held that the "scant" contacts between defendant and Massachusetts in the record—the advertisement in a trade publication, telephone call and correspondence between the parties, and shipment of the goods—"were insufficient to constitute the transaction of business in the Commonwealth so as to come within the reach of [section] 3(a)" where the defendant corporation's principal place of business was in Florida, and it maintained no office and owned no property in Massachusetts. Id.

More recent cases following Droukas largely continue its approach as to subsection (a). See Intech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. 122 (2005) (declining to extend long-arm jurisdiction for transacting business where defendants placed two advertisements in Massachusetts, had two sales to Massachusetts buyers, sent an invoice for sale and bill of sale to Massachusetts, and called Massachusetts to initiate sales); cf. DiCarlo v. C.S.C.S., Inc., 2009 WL 10729958, at *9 n.6 (D. Mass. Dec. 7, 2009) (finding jurisdiction over defendant with "ongoing, interactive relationship" with Massachusetts, as opposed to the "sporadic, isolated contacts" in Droukas).

The central inquiry of the post-Droukas cases with regard to subsection (a) is whether a defendant's contacts with the forum were "deliberate, as distinguished from fortuitous." See Filmore v. VSP North America, LLC, 2019 WL 184075, at *6 (D. Mass. Jan. 14, 2019) (citing

Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)). Sheldon alleges that Merlin's contacts with Massachusetts were deliberate. He contends that not only did Merlin ship the product to his home in Massachusetts, but that Merlin contacted him in Massachusetts through marketing emails and advertisements. He further alleges that Merlin's loyalty programs, educational resources, and customer service offerings were tailored to and targeted at customers in Massachusetts. On this record, Sheldon has made a colorable claim that Merlin does have a record of cultivating business in Massachusetts.

Turning to subsection (b), the Droukas court held that the defendant did not contract to supply the goods to the plaintiff in the Commonwealth; rather, it interpreted the shipping agreement between the parties "as having provided for the shipment of the engines of the plaintiff by means of an independent carrier, with the burden of supply or delivering the engines … in the Commonwealth on the carrier." Droukas, 375 Mass. at 157. But Droukas also directs that courts interpreting subsection (b) should look "to the place where the services or things are to be supplied," not to the place of contract. Id. at 553.

It is undisputed that Merlin supplied the RWS to Sheldon in Massachusetts. "It is not true, however, that any contractual communication into Massachusetts is sufficient to establish personal jurisdiction." M-R Logistics, LLC v. Riverside Rail, LLC, 557 F. Supp. 2d 269, 275 (D. Mass. 2008). Generally, courts considering whether a contractual relationship gives rise to jurisdiction under the long-arm statute must also "evaluate the relations between the parties, their respective activities under the contract, and the links, if any, between the defendant's participation in the transaction and Massachusetts" as relevant to subsection (a). See American Paper Recycling, Inc. v. Renew Bahamas, Ltd., 2016 WL 6635939, at *4 (Mass. Super. Ct. Sept. 23, 2016); see also M-R Logistics, LLC, 557 F. Supp. at 275; STAG Williamsport, LLC v. BHN

16

Associates, LLC, 610 F. Supp. 3d 389, 395 (D. Mass. 2022); Little, Brown and Co. v. Bourne, 493 F. Supp. 544, 547, 548 n.3 (D. Mass. 1980); but see Nasuni Corp. v. ownCloud GmbH, 607 F. Supp. 3d 82, 94 (D. Mass. 2022) (finding that "plain language" of subsection (b) conferred jurisdiction over defendant because parties' agreement provided that defendant would supply goods to plaintiff, a Massachusetts corporation, before finding that subsection (a) supported that conclusion).

"The execution of a typical bilateral contract between in-state and out-of-state parties, without more, is 'viewed as ancillary activity without substantial commercial consequence in the forum' and does not generally trigger personal jurisdiction." STAG Williamsport, 610 F. Supp. at 395 (quoting Little, Brown and Co., 493 F. Supp. at 547). But where a court conducts a holistic review of the relationship between the parties before and after the execution of a contract, and where plaintiff can show that communications are "beyond the typical," jurisdiction may be proper under the long-arm statute. See Nasuni Corp., 607 F. Supp. 3d at 94-95.

Where jurisdiction may be appropriate under subsections (a) and (b) of the long-arm statute, the court turns to the constitutional due process question before reaching the request for jurisdictional discovery.

### 2. Constitutional Due Process

Merlin contends that the court lacks personal jurisdiction over it because it is incorporated and has its principal place of business in the United Kingdom, so the court does not have general jurisdiction, and because Plaintiffs have not established that Merlin has sufficient minimum contacts with the forum to support specific jurisdiction. Mem. of Law in Supp. of Def. Merlin Cycles, Ltd.'s Mot. to Dismiss ("Merlin's Mem. in Supp.") 11-12 [Doc. No. 22]. Plaintiffs counter that Merlin advertised to them in Massachusetts, sold DT Swiss parts through

its website to Massachusetts residents, fostered ongoing connections with Massachusetts customers, and systematically served the Massachusetts market. Pl.'s Merlin Opp'n 9 [Doc. No. 23].

           a.   General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). "To permit the exercise of general jurisdiction, the defendant must 'engage[ ] in the "continuous and systematic" pursuit of general business activities in the forum state.'" Id. at 32 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)). Contacts must not only be "continuous and systematic," but also such that the corporation is rendered "at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). While the Supreme Court has left open "the possibility that in an exceptional case" a corporation might be "at home" elsewhere, Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014), the court continues to cite a corporation's place of incorporation and principal place of business as the paradigm factors, see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). For purposes of the general jurisdiction analysis, the court "consider[s] all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Cossaboon, 600 F.3d at 29 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir. 2005)).

Merlin is incorporated in and has its principal place of business in the United Kingdom. There are likewise no extraordinary circumstances that would render Merlin "at home" in this

forum despite not being incorporated or having its principal place of business here. Accordingly, general jurisdiction may not be exercised over Merlin in the state of Massachusetts.

      b.   Specific Jurisdiction

         i.   Legal Standard

"Specific personal jurisdiction . . . may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Warren Envtl., Inc. v. Source One Envtl., Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (cleaned up). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins, 825 F.3d at 35). "Questions of specific jurisdiction are always tied to the particular claims asserted" and thus the inquiry must be conducted "on a claim-by-claim basis." Phillips Exeter Acad., 196 F.3d at 289.

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster, 26 F.3d at 206, 207). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker, 42 F.3d at 61).

"There is a natural blurring of the relatedness and purposeful availment inquiries in cases [] in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at

all." <u>Phillips Exeter Acad.</u>, 196 F.3d at 289. "This determination bears at least a family resemblance to a determination of whether a defendant purposefully availed himself of the protections of the forum state. Notwithstanding this resemblance, however, the inquiries are different . . . ." <u>Id.</u>

"The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." <u>Cossaboon</u>, 600 F.3d at 32 (internal quotation marks and citation omitted). Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances." <u>Id.</u> (citation omitted).

        ii.    Facts Relevant to Specific Jurisdiction

Plaintiffs emphasize several facts allegedly sufficient to justify personal jurisdiction over Merlin. First, Merlin has sent "twice weekly emails" to "Sheldon and others in Massachusetts" advertising their products. Sheldon Merlin Aff. ¶ 4a [Doc. No. 23, Attach. A]. One of the marketing emails Sheldon received from Merlin promoted and led him to purchase the DT Swiss RWS product that caused his accident. <u>Id.</u> at ¶ 5. Sheldon states that he is not "opting-into" receiving Merlin's newsletter or advertisements. <u>Id.</u> at ¶ 6. Second, Merlin offers a loyalty program to Massachusetts residents. <u>Id.</u> at ¶ 11. Third, Merlin sold and shipped the RWS to Sheldon at his residence in Massachusetts. <u>Id.</u> at ¶¶ 14-15.

Merlin counters that Plaintiffs have not demonstrated that Merlin has the requisite minimum contacts with Massachusetts for the court to exercise personal jurisdiction. Merlin's Mem. in Supp. 10-11 [Doc. No. 22]. It contends that Plaintiffs have failed to allege facts demonstrating that Merlin has purposeful contacts with Massachusetts, and that the sale of the

DT Swiss RWS, its shipment by Merlin to Massachusetts, and Sheldon's receipt of newsletters from DT Swiss are insufficient to establish personal jurisdiction. Id.

The parties' jurisdictional affidavits contradict each other on the question of whether Sheldon opted-in to receive newsletters and advertisements from Merlin. Merlin claims that its system indicates that Sheldon is signed up to receive electronic newsletters. Oldham Aff. ¶ 19 [Doc. No. 22-1]. It also asserts that a person visiting its website can "choose to sign up for a weekly electronic newsletter" from Merlin, but that Merlin "cannot tell where the electronic newsletters go. . . . Specifically, Merlin does not know where the customer is physically located when receiving the electronic newsletter." Id. at ¶ 16. Merlin also alleges that "if the customer does not affirmatively choose to receive the newsletter . . . the customer will not receive it." Id. at ¶ 18. Sheldon claims that "[his] account confirms that [he is] not opting-in to receiving Merlin's Newsletter" and that he is "not opting-in to the use of 'Cookies' in connection with Merlin's advertising." Sheldon Merlin Aff. ¶ 6-7 [Doc. No. 23, Attach. A.].

Essentially, Merlin has a single brick-and-mortar store in the United Kingdom and a website, which is accessible to anyone with internet access, including those outside the United Kingdom. Oldham Aff. ¶ 14 [Doc. No. 22-1]. A person who decides to purchase a product from Merlin's website provides a delivery address and shipping information and Merlin ships the requested products to the provided address. Id. at ¶ 15. The question, then, is whether the combination of (1) the maintenance of a retail website accessible by Massachusetts residents; (2) the sale to Sheldon in and shipment of goods to Massachusetts; and (3) the distribution of a bi-weekly newsletter and advertisements to at least one Massachusetts resident establishes minimum contacts with Massachusetts such that personal jurisdiction is appropriate.

iii.    Purposeful Availment

"The two cornerstones of purposeful availment are 'voluntariness' and 'foreseeability.'" PREP Tours, Inc. v. American Youth Soccer Organization, 913 F.3d 11, 19-20 (1st Cir. 2019). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself.'" Phillips v. Prairie Eye Center, 530 F.3d 22, 28 (1st Cir. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Additionally, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474. Generally, the requisite contact cannot stem from a plaintiff's "unilateral activity," see id., but the application of the rule prohibiting a plaintiff's unilateral activity from establishing the requisite foreseeable connection between the defendant and the forum "will vary with the quality and nature of the defendant's activity," id. at 475.

On this record, Merlin's communications with Sheldon via bi-weekly newsletters and advertisements, whether solicited by Sheldon or not, in addition to Sheldon's purchase history with Merlin, are sufficient to show purposeful availment by Merlin of Massachusetts. For purposes of purposeful availment, "[v]oluntariness exists when a defendant reaches out to plaintiff's state of residence to create a relationship." Photographic Illustrators Corporation v. A.W. Graham Lumber, LLC, 196 F. Supp. 3d 123, 129 (D. Mass. 2016). Even if Sheldon elected to receive communications from Merlin, bi-weekly newsletters, and advertisements—including an advertisement that led to the purchase of the device at issue in this suit—is axiomatically "reach[ing] out." Moreover, it is undisputed that Sheldon has an account with Merlin that includes his address and allows him to manage his data and participate in Merlin's loyalty program, through which customers "can ear[n] loyalty points and discount vouchers as a result of

their use of Merlin's website." Sheldon Merlin Aff. ¶¶ 10-11 [Doc. No. 23, Attach. A]. It is also undisputed that Sheldon has made at least two prior purchases from and returns to Merlin. Oldham Aff. ¶ 20 [Doc. No. 22-1]. Based on these facts, Merlin was on notice that its products were reaching Massachusetts, and through its loyalty program, newsletters, and advertisements it "created [] relationship[s]" with its customers, including Sheldon. See Philips Exeter Acad., 196 F.3d at 292.

Taking Plaintiffs' properly supported proffers as true, the court finds that they have met their prima facie burden of alleging sufficient facts to establish that Merlin purposefully availed itself of Massachusetts such that claims against them here would be foreseeable.

### iv.    Relatedness

"[R]elatedness is the divining rod that separates specific jurisdiction cases from general jurisdiction cases . . . [I]t ensures that the element of causation remains in the forefront of the due process investigation." Ticketmaster, 26 F.3d at 207. For tort claims, courts "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F.3d at 289.

Here, Plaintiffs have proffered facts establishing that (1) Merlin sent electronic advertisements to Sheldon, one of which was for the subject RWS; (2) Sheldon purchased the RWS through Merlin after receiving its advertisement; (3) Merlin shipped the RWS to Sheldon in Massachusetts; and (4) the RWS was the alleged cause of Sheldon's accident. This is sufficient on prima facie review to establish that Plaintiffs' causes of action "arise out of or relate to [Merlin's] contacts with the forum." See Ford Motor Co., 141 S. Ct. at 1026.

v.      Reasonableness

The last consideration for a court seeking to exercise personal jurisdiction over a

defendant is whether such exercise is reasonable. "[T]he Due Process Clause bars a court from

asserting jurisdiction over the person of a defendant if doing so would be fundamentally unfair"

and "gauging fairness requires an assessment of reasonableness for, in certain circumstances,

unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness."

Ticketmaster, 26 F.3d at 210. In assessing reasonableness, courts consider five factors (the

"Gestalt factors"): (1) the defendant's burden of appearance; (2) the forum state's adjudicatory

interest; (3) the plaintiff's interest in obtaining convenient relief; (4) the administration of justice;

and (5) pertinent policy arguments. See Sawtelle, 70 F.3d at 1394.

Merlin argues that, in the event Plaintiffs demonstrate the necessary minimum contacts

for personal jurisdiction, that jurisdiction would be unreasonable under the gestalt factors.

Merlin's Mem. in Supp. 17-18 [Doc. No. 22]. It contends that, because its connections with the

forum state, if deemed sufficient for jurisdiction, are weak, it "need show very little in

demonstrating 'unreasonableness'" because there is a sliding scale relationship between the

purposeful availment and relatedness prongs and reasonableness. Id. (citing Ticketmaster, 23

F.3d at 210). Specifically, Merlin argues that the burden of appearing and litigating in

Massachusetts would offend traditional notions of fair play and substantial justice because all of

its activities and employees are located in the United Kingdom. Id. It also alleges that its

presence in the litigation is unnecessary to Plaintiffs' interest in obtaining convenient relief,

because Plaintiffs bring manufacturing and design defect claims, and it is undisputed that Merlin

did not design or manufacture the RWS. Id. at 18-19. Finally, Merlin contends that

Massachusetts does not have a strong interest in adjudicating the action against a foreign

company with no ties to the Commonwealth, particularly where the injury did not occur in Massachusetts. Id. at 19.

The first factor, the burden to the Defendants, weighs most heavily in favor of finding that exercising personal jurisdiction over Merlin would be unreasonable. It would undoubtedly be burdensome for Merlin, a foreign corporation, to litigate in Massachusetts. However, the First Circuit has held that "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, we think this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Merlin has not asserted any such circumstances.

With regard to Massachusetts's adjudicatory interest in the dispute, "[a]lthough a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, [] that interest is diminished where the injury occurred outside the forum state." Nowak, 94 F.3d at 718 (citing Sawtelle, 70 F.3d at 1395) (internal citation omitted). "Nonetheless, [the court's] task is not to compare the interest of the two sovereigns— the place of the injury and forum state—but to determine whether the forum state has *an* interest." Id. Here, the subject injury occurred in Connecticut. Still, Massachusetts has at least a colorable interest in this litigation given that Merlin solicited Massachusetts customers and shipped the RWS to Sheldon in Massachusetts.

As to the third factor, Plaintiffs' interest in obtaining convenient relief, Merlin's contention that it is unnecessary to Plaintiffs' claims because it did not manufacture or design the product at issue disregards that Plaintiffs also bring claims specifically against Merlin for breach of warranty (Counts IV and V) and negligence (Count VI). Compl. [Doc. No. 1]. Additionally, in

considering this factor, courts are to "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster, 26 F.3d at 211.

On balance, the gestalt factors weigh slightly in Plaintiffs' favor.[4] Therefore, the court finds that exercising specific jurisdiction over Merlin is reasonable and that Plaintiffs have sufficiently established that personal jurisdiction is appropriate here.

      3.   Jurisdictional Discovery

Having determined that constitutional requirements are met, the court turns back to the long-arm statute and Plaintiffs' request that the court, if it requires additional evidence of Merlin's relationship to the forum, order jurisdictional discovery "in the form of Interrogatories, Rule 34 Requests, and, possibly, [] Rule 30(b)(6) deposition(s)." Pl.'s Merlin Opp'n 15 [Doc. No. 23]. Specifically, Plaintiffs seek to uncover evidence "1) exploring how Merlin directs its marketing efforts in Massachusetts, 2) exploring how much revenue Merlin generated in Massachusetts, and 3) exploring how Merlin solicited Mr. Sheldon's business (and that of others) through its website and its marketing efforts." Id. at 14 [Doc. No. 23].

The court finds that jurisdictional discovery as to Merlin is warranted here. Though the sale of the RWS by Merlin to Sheldon in Massachusetts may not alone be enough to confer jurisdiction under the long-arm statute, jurisdictional discovery may uncover facts establishing that Merlin has sought to participate in the economic life of the Commonwealth. See United Elec., Radio & Mach. Workers of Am. , 960 F.2d at 1087.

---

[4] The parties do not discuss the fourth or fifth gestalt factors, the administration of justice, and pertinent policy arguments. The court finds that "the administration of justice does not appear to cut in either direction" here, Ticketmaster, 26 F.3d at 211, and that any policy arguments have been waived.

In sum, having found that Plaintiffs are able to satisfy requirements for constitutional due process as to Merlin, and having made a colorable claim for jurisdiction under the Massachusetts long-arm statute, Merlin's motion to dismiss is denied without prejudice, and Plaintiffs' request for jurisdictional discovery as to Merlin is granted.

## IV. Conclusion

For the foregoing reasons, as Defendant DT Swiss the Motion to Dismiss [Doc. No. 11] is GRANTED and the Conditional Motion for Jurisdictional Discovery [Doc. No. 16] is DENIED. As to Defendant Merlin, the Motion to Dismiss [Doc. No. 21] is DENIED and the Conditional Motion for Jurisdictional Discovery [Doc. No. 23] is GRANTED.

IT IS SO ORDERED

September 22, 2023                          /s/Indira Talwani_____
                                           United States District Judge

27